FILED
10/28/2021
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2021

## STATE OF TENNESSEE v. WILLIAM JESSE CLOUSE

**Appeal from the Criminal Court for Putnam County**
**No. 2017-CR-982      Gary McKenzie, Judge**

_____

### No. M2020-00932-CCA-R3-CD

_____

The Defendant, William Jesse Clouse, pleaded guilty in the Putnam County Criminal Court to three counts of vehicular assault, a Class D felony. *See* T.C.A. § 39-13-106 (2018) (subsequently amended). The trial court imposed an eight-year sentence to be served in confinement. On appeal, the Defendant contends that the trial court erred by denying his request for split confinement. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Benjamin D. Marsee, Cookeville, Tennessee, for the appellant, William Jesse Clouse.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; Jamie Hargis and Beth Willis, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions relate to a July 10, 2017 multi-vehicle crash that was caused by the Defendant's driving into oncoming traffic. The Defendant was indicted for three counts of vehicular assault and one count of violating the motor vehicle habitual offender (MVHO) law.[1] The Defendant pleaded guilty to three counts of vehicular assault in exchange for the dismissal of the MVHO violation. Pursuant to the plea agreement, he received concurrent eight-year sentences, and the trial court determined the manner of service.

---

[1] We note that Tennessee Code Annotated sections 55-10-602 to 55-10-618 were repealed by 2019 Pub. Acts, c. 486, § 3, which became effective on November 13, 2019.

At the guilty plea hearing, the State's recitation of the facts was as follows:

On July 10, 2017, the Cookeville Police Department responded to a crash here in Putnam County at C.C. Camp Road and Jackson. Their crash investigation team determined that the vehicle that Mr. Clouse was driving drove in oncoming traffic causing a total of three vehicles to crash. There were three occupants inside those two other vehicles. All three of those occupants, who were Patricia Grimes, James Grimes, and Mark Maher, all suffered different versions of serious bodily injury. Obviously, at trial, we would have medical proof and them to testify.

Officer James Lee with the Cookeville Police Department went to the Cookeville Regional Medical Center and made contact with Mr. Clouse. He consented to a blood draw. That came back being point one three (.13).

At the May 26, 2020 sentencing hearing, the presentence report was received as exhibit. The report reflects that the sixty-three-year-old Defendant had previous convictions for disorderly conduct, violating the financial responsibility law, an undefined traffic offense, five counts of driving while his license was suspended, canceled, or revoked, three counts of violating the MVHO law, misdemeanor theft, two counts of evading arrest, and three counts of driving under the influence (DUI). The Defendant's previous convictions occurred between 1994 and 2016 and involved ten offense dates. The report reflects that in 2006, the Defendant violated his probation in connection with an evading arrest conviction on the ground that the Defendant tested positive for methamphetamine. The Defendant received ninety days' confinement for the probation violation.

The presentence report reflects that the Defendant stated he completed the eleventh grade but left school to find employment. He reported having excellent mental health but poor physical health. The Defendant stated that he suffered from back, neck, and shoulder pain from previous injuries and that he began receiving disability benefits in 2013. The Defendant reported working in the construction industry before receiving disability benefits and receiving treatment for alcohol abuse in 2019. He reported first drinking alcohol at age fifteen or sixteen but said he had not used alcohol since receiving treatment in 2019. He reported first using marijuana at age seventeen or eighteen and last using it in January 2020. The Defendant reported first using opioids in 2012 and said that he abused his prescription medication before he quit "cold turkey." The Defendant reported using hallucinogenic mushrooms during the 1980s and 1990s and methamphetamine in the 1970s.

The presentence report reflects that the Defendant received a Strong-R Assessment score of low.

Mark Mahar submitted a victim impact statement during the presentence investigation. The statement described the significant injuries he sustained, including fractures to the back, neck, ribs, and sternum. Mr. Mahar suffered cuts, contusions, and a collapsed lung. Mr. Mahar was hospitalized for weeks and required weeks of inpatient rehabilitation and physical therapy, and his life had changed fundamentally since the crash.

Patricia Grimes read a victim impact statement to the trial court. She stated that the Defendant drove into oncoming traffic and struck Mr. Mahar's vehicle, which "flipped head-on into our van, landed upside down several feet from us." She said that her van stopped immediately and that the airbags deployed with tremendous force. She said that she suffered injuries and that her husband, the late Jimmy Grimes, bled profusely from his injuries, based in part on his use of blood thinning medication. She said that her husband suffered fractures to his sternum and ribs and was released from the hospital but that she received three days of hospital care because of an "extremely hard blow" to her chest. She stated that she, too, sustained fractured ribs and sternum. She said that her husband could not drive because of the pain and that he suffered from depression as a result of his injuries. She requested the Defendant serve his sentence in confinement to prevent the Defendant from injuring others.

Gail Maher, Mr. Maher's wife, read a victim impact statement to the trial court. She stated that her husband was flown to Vanderbilt Medical Center after the crash. She said that he suffered fractures to fifteen ribs, the neck, the back, and the sternum. She said he underwent emergency back surgery, during which a rod was implanted to stabilize the area, and wore a back brace for six weeks. He suffered a collapsed lung while receiving inpatient rehabilitation. After he came home, he received months of outpatient rehabilitation for his injuries. She said that because of the changes to his body, he underwent two hip replacement surgeries and physical therapy. She said that although he could walk, he was unable to bend to put on socks. She said the crash caused emotional changes in her husband, noting that he went from living an active lifestyle to being fearful of death and angry because of the injuries he suffered. She likewise described their financial difficulties stemming from her husband's injuries, which included bankruptcy proceedings. She requested the Defendant serve his sentence in confinement.

Leslie Gail Clouse, the Defendant's sister, testified that the crash devastated the Defendant. She said that the Defendant had been depressed and that he knew the crash was his fault. She said that the Defendant was remorseful for causing the crash, that he entered an inpatient rehabilitation program after the crash, and that he had not drank alcohol since. She said that he had lived with her since his release from the rehabilitation program and that she would have known if he had drank. She said, too, that the Defendant no longer drove.

Ms. Clouse testified that in 2018, the Defendant was involved in a motor vehicle accident and that he suffered severe injuries. She said that the Defendant "died" and was hospitalized for two to three weeks. She said that the injuries the Defendant suffered in the crash were similar to the injuries suffered by the victims in the present case. She said that the Defendant did not sleep well or move around well due to pain but that he was her caretaker. She explained that she had lung cancer.

Patricia Bohannon, the Defendant's sister, testified that she needed the Defendant to care for her due to "issues" with her arms and legs. She stated that she hoped the Defendant could come home and that she, Ms. Clouse, and the Defendant could take care of each other.

The trial court ordered the Defendant to serve his eight-year sentence in confinement. In making its determinations, the court stated that it considered the evidence at the sentencing hearing, the presentence report, arguments of counsel, the principles of sentencing, the nature and characteristics of the offenses, mitigation and enhancement factors, the Defendant's potential for rehabilitation and treatment, statistical information, and the risks and needs assessment.

The trial court applied enhancement factor (1) after determining that the Defendant had previous convictions in addition to the felony convictions used to establish the Defendant as a Range II offender. *See* T.C.A. § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]").

When considering the manner of service, the trial court determined that the Defendant's lengthy criminal history began with a DUI conviction in the 1990s and that the Defendant's criminal history reflected many years of struggling with alcohol addiction, which led to the offenses in the present case. The court found that the Defendant had three previous DUI convictions, along with previous convictions for violating the MVHO law and for driving while his license was suspended, canceled, or revoked. The court, as a result, determined that the Defendant had a long history of criminal conduct that warranted serving the eight-year sentence in confinement. The court likewise determined that confinement was necessary to protect society and to avoid depreciating the seriousness of the offenses because the Defendant had received probation previously and because the Defendant's criminal conduct had escalated from driving while his license was suspended, canceled, or revoked and driving while impaired to inflicting serious bodily injury upon multiple victims. This appeal followed.

The Defendant contends that the trial court erred by ordering him to serve his entire sentence in confinement. He argues that serving his entire sentence "results in an injustice" and that the court should have ordered split confinement, after service of the mandatory

minimum sentence of 150 days. *See* T.C.A. 39-13-106(b)(5) (2019). The State responds that the trial court did not abuse its discretion by ordering the Defendant to serve the entirety of the eight-year sentence.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103, -210; *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. §§ 40-35-102 (2018), 41-1-126 (2018) (validated risk and needs assessments).

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *Caudle*, 388 S.W.3d at 278-79. Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2014); *see Trotter*, 201 S.W.3d at 654. A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (concluding that the same factors used to determine whether to impose judicial diversion are applicable in determining whether to impose probation); *see also State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

The record reflects that the trial court considered the evidence at the sentencing hearing, the presentence report, arguments of counsel, the principles of sentencing, the nature and characteristics of the offenses, mitigation and enhancement factors, the Defendant's potential for rehabilitation and treatment, statistical information, and the risks and needs assessment. The court placed significant weight upon the Defendant's lengthy criminal history in denying his request for split confinement, along with the needs to protect society and to avoid depreciating the seriousness of the offense. *See* T.C.A. § 40-35-103(1)(A), (B). The Defendant's criminal history began in July 1994 and continued through May 2016, approximately one year before the present offenses. The convictions included disorderly conduct, violating the financial responsibility law, an undefined traffic offense, five counts of driving while his license was suspended, canceled, or revoked, three counts of violating the MVHO law, misdemeanor theft, two counts of evading arrest, and three counts of DUI. Likewise, the record reflects that Defendant's criminal conduct escalated from violating the MVHO law and DUI laws, to causing a multi-vehicle crash, which inflicted serious bodily injury upon three victims. Furthermore, the Defendant had received the benefit of probation previously, which he violated, and he continued to violate the laws governing driving and the consumption of alcohol, which resulted in significant physical, emotional, and financial injuries to the victims in this case. The court's determinations are supported by the record. As a result, the court did not abuse its discretion by denying the Defendant's request for split confinement.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE